ON REHEARING

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 14-4078**

———————

UNITED STATES OF AMERICA,

                Plaintiff - Appellant,

     v.

RODNEY MARSHALL VINSON,

                Defendant - Appellee.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:13-cr-00121-FL-1)

———————

Argued: January 27, 2015        Decided: November 3, 2015

———————

Before TRAXLER, Chief Judge, and GREGORY and AGEE, Circuit Judges.

———————

Affirmed by published opinion. Chief Judge Traxler wrote the opinion in which Judge Gregory and Judge Agee concur.

———————

**ARGUED**: Barbara Dickerson Kocher, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant. Robert Earl Waters, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellee. **ON BRIEF**: Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant. Thomas P. McNamara, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North

Carolina, for Appellee.

———————

TRAXLER, Chief Judge:

Police officers dispatched to the residence of Rodney Marshall Vinson found a rifle and ammunition during a consensual search. After determining that Vinson had a prior North Carolina conviction amounting to a "misdemeanor crime of domestic violence," 18 U.S.C. § 921(a)(33)(A), the government charged Vinson with possession of a firearm by a prohibited person, see 18 U.S.C. § 922(g)(9). The district court granted Vinson's motion to dismiss the indictment, concluding that Vinson was not a prohibited person because the state statute at issue did not, as a categorical matter, qualify as a misdemeanor crime of domestic violence. The government appeals.

In our previous opinion in this case, in which Judge Gregory dissented, we vacated the district court's order dismissing the indictment and remanded with instructions that the district court reinstate the indictment against Vinson. See United States v. Vinson, No. 14-4078 (4th Cir. filed July 21, 2015). Vinson thereafter filed a petition for rehearing in which he asserted a new basis for affirming the dismissal of the indictment. Upon consideration of the point raised in the petition for rehearing, we granted the petition and we now

3

affirm the district court's order dismissing the indictment against Vinson.[1]

I.

A.

Section 922(g) prohibits the possession of firearms by various classes of persons, including those convicted of a "misdemeanor crime of domestic violence" ("MCDV").  18 U.S.C. § 922(g)(9).  Subject to certain exceptions not relevant here, a crime qualifies as a MCDV if it:

> (i) is a misdemeanor under Federal, State, or Tribal . . . law; and

---

[1]    Vinson did not raise the issue we find dispositive in his brief before this court or the district court.  "Ordinarily, . . . we do not decide issues on the basis of theories first raised on appeal."  <u>Skipper v. French</u>, 130 F.3d 603, 610 (4th Cir. 1997).  Although this court "may affirm judgments on alternative grounds to those relied upon by a lower court, this contemplates that the alternative ground shall first have been advanced in that court, whether or not there considered."  <u>Id.</u> (citation omitted).  The rule precluding consideration of issues raised for the first time on appeal, however, is prudential, not jurisdictional.  <u>See</u> <u>id.</u>  The issue Vinson raises involves a pure question of law that is closely related to the arguments made by the government in its opening and reply briefs, and the government, at our request, has responded to Vinson's petition for rehearing.  Moreover, North Carolina does not have a mechanism for certifying questions of state law to its Supreme Court, <u>see</u> <u>Town of Nags Head v. Toloczko</u>, 728 F.3d 391, 398 (4th Cir. 2013), and failure to consider the issue would leave in place our incomplete and thus incorrect analysis of North Carolina law.  Under these circumstances, we exercise our discretion to consider the issue raised in Vinson's petition for rehearing.  <u>See</u> <u>Hormel v. Helvering</u>, 312 U.S. 552, 556-57 (1941).

4

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A). The existence of the domestic relationship between the victim and defendant specified in the statute is an element of the § 922(g)(9) charge that must be proven beyond a reasonable doubt by the government, but the relationship need not be an element of the underlying state offense. See United States v. Hayes, 555 U.S. 415, 426 (2009). As is clear from the terms of the statute, however, the use or attempted use of physical force, or threatened use of a deadly weapon, must be an element of the underlying state offense. The "physical force" element of § 921(a)(33)(A) is satisfied "by the degree of force that supports a common-law battery conviction," United States v. Castleman, 134 S. Ct. 1405, 1413 (2014), "namely, offensive touching," id. at 1410.

To determine whether a prior conviction renders the defendant a prohibited person under § 922(g), we apply the familiar "categorical approach." Id. at 1413. Under the categorical approach, we look "only to the fact of conviction and the statutory definition of the prior offense. . . . , focus[ing] on the elements of the prior offense rather than the

5

conduct underlying the conviction." United States v. Cabrera-Umanzor, 728 F.3d 347, 350 (4th Cir. 2013) (internal quotation marks omitted).

A modification to the categorical approach may be used in cases where the underlying state crime "consists of multiple, alternative elements creating several different crimes, some of which would match the generic federal offense and others that would not." Omargharib v. Holder, 775 F.3d 192, 197 (4th Cir. 2014) (internal quotation marks omitted). When such "divisible" crimes are at issue, we may apply the "modified categorical approach," which permits us "to examine a limited class of documents to determine which of a [crime's] alternative elements formed the basis of the defendant's prior conviction." Descamps v. United States, 133 S. Ct 2276, 2284 (2013).[2] "General divisibility, however, is not enough; a [state crime] is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the [crime] may be divided constitutes, by its elements, [a

---

[2] Although Descamps addressed a state crime defined by statute, we have since held that the Descamps analysis applies to state crimes whose elements are defined by case law rather than by statute. See United States v. Aparicio-Soria, 740 F.3d 152, 155 (4th Cir. 2014) (en banc) ("[T]he categorical/modified categorical typologies apply equally to statutory and common law crimes."); United States v. Hemingway, 734 F.3d 323, 333 (4th Cir. 2013) ("[T]he Descamps divisibility analysis is applicable to the question of whether a common law offense constitutes a[] . . . predicate crime.").

6

qualifying predicate offense]." Cabrera-Umanzor, 728 F.3d at 352; see Descamps, 133 S. Ct. at 2285.

## B.

Vinson's prior conviction involved a violation of N.C. Gen. Stat. § 14-33, a statute that classifies simple and aggravated forms of misdemeanor assault, assault and battery, and affray. Vinson was convicted of violating subsection (c)(2) of the statute, which provides that "any person who commits any assault, assault and battery, or affray is guilty of a Class A1 misdemeanor if, in the course of the assault, assault and battery, or affray, he . . . [a]ssaults a female, he being a male person at least 18 years of age." N.C. Gen. Stat. § 14-33(c)(2).

There is no statutory definition of assault, battery, or affray, so the common-law rules governing these crimes apply to prosecutions under N.C. Gen. Stat. § 14-33. See State v. Roberts, 155 S.E.2d 303, 305 (N.C. 1967). Conviction under subsection (c)(2) requires proof of the following elements: "(1) an assault (2) upon a female person (3) by a male person (4) who is at least eighteen years old." State v. Wortham, 351 S.E.2d 294, 296 (N.C. 1987).

The district court understood § 14-33(c)(2) as establishing the crime of assault on a female, a crime that can be committed through an assault, assault and battery, or an affray. In the

7

district court's view, assault, battery, and affray were alternate means of committing the same crime, not alternate elements of different crimes, such that § 14-33(c)(2) was not divisible and the modified categorical approach was not applicable. See Omargharib, 775 F.3d at 198 (explaining that alternate means of committing a single crime do make the crime divisible); see also Descamps, 133 S. Ct. at 2285 n.2.

Applying the categorical approach, the district court concluded that a violation of 14-33(c)(2) did not amount to an MCDV because the use or threatened use of physical force is not an element of assault under North Carolina law. In reaching this conclusion, the district court applied this court's decision in United States v. White, 606 F.3d 144 (4th Cir. 2010), and interpreted the "physical force" requirement of § 921(a)(33)(A)(ii) to mean "violent force," see id. at 153 ("[T]he phrase 'physical force' means violent force -- that is, force capable of causing physical pain or injury to another person." (internal quotation marks omitted)).

After the district court granted Vinson's motion to dismiss, however, the Supreme Court issued its decision in Castleman and held, directly contrary to our holding in White, that violent force was not necessary to satisfy the "physical force" requirement of § 921(a)(33)(A)(ii). See Castleman, 134 S. Ct. at 1413. Instead, the Court held that the statute

8

"incorporated the common-law meaning of 'force' -- namely, offensive touching," id. at 1410, and that "the requirement of 'physical force' is satisfied, for purposes of § 922(g)(9), by the degree of force that supports a common-law battery conviction," id. at 1413.

## II.

The sole issue on appeal is whether Vinson's conviction under N.C. Gen. Stat. § 14-33(c)(2) qualifies as a conviction for an MCDV as defined by 18 U.S.C. § 921(a)(33)(A). The government does not challenge the district court's determination that Vinson's conviction would not qualify as an MCDV under the categorical approach. Instead, the government argues that, contrary to the district court's conclusion, § 14-33(c)(2) is divisible, such that the modified categorical approach may be applied. And because the charging document in this case shows that the conviction was predicated on a battery of Vinson's wife, the government contends that the modified categorical approach establishes that Vinson was convicted of an MCDV and that the district court therefore erred by dismissing the indictment against Vinson.

In the government's view, the crime is divisible because North Carolina law defines "assault" through alternate elements. North Carolina law includes three different definitions of the crime of assault. First, under what can be called the

9

"attempted battery" formulation, an assault can be committed by "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." Roberts, 155 S.E.2d at 305 (internal quotation marks omitted). Second, under the "show of violence" formulation, an assault can be committed by "a show of violence accompanied by reasonable apprehension of immediate bodily harm or injury on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed." Id. Finally, under the "completed battery" formulation, an assault conviction may be premised on proof of a battery. See In re K.C., 742 S.E.2d 239, 243 (N.C. Ct. App. 2013) ("When a battery has occurred, assault may be proven by a finding of either assault or battery on the victim."); State v. Britt, 154 S.E.2d 519, 521 (N.C. 1967) ("A battery always includes an assault, and is an assault whereby any force is applied, directly or indirectly, to the person of another."). The government argues that these different formulations of assault are alternate elements that render the crime divisible and thus permit application of the modified categorical approach.

10

Whether the multiple assault formulations are alternate means or alternate elements is the issue that divided this court in our original opinion, and we need not delve into that issue again. As we have explained, whether a statute or criminal offense is divisible depends on the existence of alternate elements and a matching category -- that is, the alternate elements must create at least one category or form of an offense that matches up to the elements of the generic federal offense in question. See Omargharib, 775 F.3d at 197; Cabrera-Umanzor, 728 F.3d at 352. Assuming without deciding that the assault formulations amount to alternate elements creating separate forms of the offense, none of the forms of the offense require the level of intent necessary to qualify as an MCDV.

A.

As noted above, an MCDV is defined as an offense that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon." 18 U.S.C. § 921(a)(33)(A)(ii). Because the threatened use of a deadly weapon is not an element of assault under North Carolina law, we focus on the "use or attempted use of physical force" requirement.

In Leocal v. Ashcroft, 543 U.S. 1 (2004), the Supreme Court, interpreting the "crime of violence" definition of 18 U.S.C. § 16, concluded that "the most common employment of the

11

word 'use' connotes the <u>intentional</u> availment of force." <u>Id.</u> at 9. The Court therefore held that "negligent or merely accidental conduct" does not constitute a <u>use</u> of physical force. <u>Id.</u> Although the <u>Leocal</u> Court expressly did not decide whether reckless conduct could constitute a "use" of force, <u>see</u> <u>id.</u> at 13, this court has since concluded that a reckless use of force does not satisfy the requirements of § 16, <u>see</u> <u>Garcia v. Gonzales</u>, 455 F.3d 465, 469 (4th Cir. 2006) ("[R]ecklessness, like negligence, is not enough to support a determination that a crime is a 'crime of violence.'"); <u>accord</u> <u>Bejarano-Urrutia v. Gonzales</u>, 413 F.3d 444, 447 (4th Cir. 2005).

Because the relevant language in § 16 is largely identical to that of § 921(a)(33)(A), <u>Leocal</u>'s definition of "use" is applicable to this case. Accordingly, if North Carolina law permits an assault conviction based on negligent or reckless conduct, then none of the different assault formulations categorically qualify as an MCDV.

### B.

North Carolina case law establishes that the defendant must act intentionally to be guilty of assault. <u>See, e.g.</u>, <u>State v. Starr</u>, 703 S.E.2d 876, 880 (N.C. Ct. App. 2011) ("[A]ll that is necessary to sustain a conviction for assault is evidence of an overt act showing an intentional offer by force and violence to do injury to another sufficient to put a person of reasonable

12

firmness in apprehension of immediate bodily harm." (internal quotation marks and emphasis omitted)); State v. Britt, 154 S.E.2d 519, 521 (N.C. 1967) ("[A]n assault is an intentional attempt, by violence, to do injury to the person of another." (internal quotation marks omitted)); State v. Davis, 23 N.C. 125, 127 (N.C. 1840) ("[An assault] must be intentional -- for, if it can be collected, notwithstanding appearances to the contrary, that there is not a present purpose to do an injury, there is no assault."). Likewise, North Carolina's pattern jury instructions addressing assault offenses generally provide that the defendant must act intentionally. See, e.g., N.C. Pattern Instructions - Crim. 208.40 (simple assault); id. 208.70 (assault on a female).

Because assaults must be intentional, an assault conviction under North Carolina law would seem to require a "use" of force as defined by Leocal. As Vinson points out in his petition for rehearing, however, the requisite intent can be established through proof of "culpable negligence." State v. Jones, 538 S.E.2d 917, 923 (N.C. 2000) ("actual intent" may be implied from proof of "culpable or criminal negligence"); State v. Thompson, 454 S.E.2d 271, 273 (N.C. Ct. App. 1995) ("Where an alleged assault is unintentional and the perpetrator acted without wrongful purpose in the course of lawful conduct and without culpable negligence, a resultant injury will be excused as

13

accidental." (emphasis added)); see also N.C. Pattern Instructions - Crim. 307.11 ("An injury is accidental if it is unintentional, occurs during the course of lawful conduct, and does not involve culpable negligence.").

North Carolina law defines "culpable negligence" as "such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." Jones, 538 S.E.2d at 923 (internal quotation marks omitted). As this court explained in United States v. Peterson, 629 F.3d 432 (4th Cir. 2011), this standard, with its focus on thoughtless disregard, is a lesser standard of culpability than recklessness, which requires at least "a conscious disregard of risk." Id. at 437 (emphasis added).

Accordingly, as Vinson argues, North Carolina law permits convictions for all forms of assault, including completed-battery assault, in cases where the defendant's conduct does not rise even to the level of recklessness. See State v. Dammons, 461 S.E.2d 6, 8 (N.C. Ct. App. 1995) (completed-battery case finding no error in jury instructions stating "that defendant would not be guilty of the assault if the shooting was accidental [and] that a shooting is not accidental if it results from culpable negligence"). Thus, none of the different forms of assault categorically qualifies as an MCDV, because each form

14

permits conviction for conduct that does not amount to a "use" of force under <u>Leocal</u>. And because none of the assault forms categorically qualifies as an MCDV, assault is not a divisible offense, and the modified categorical approach is inapplicable. <u>See</u> <u>Descamps</u>, 133 S. Ct. at 2285; <u>Cabrera-Umanzor</u>, 728 F.3d at 352.

## III.

Because none of the categories of assault under North Carolina law have elements matching the elements of an MCDV under 18 U.S.C. § 921(a)(33)(A), we hereby affirm the district court's judgment dismissing the indictment against Vinson.

<u>AFFIRMED</u>

15