**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4164

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TAHJI ANTONIO ELEY,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Louise W. Flanagan, District Judge.  (5:20-cr-00318-FL-1)

Submitted:  April 26, 2023                                    Decided:  June 2, 2023

Before NIEMEYER and HARRIS, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  Richard L. Brown, Jr., LAW OFFICES OF RICHARD L. BROWN, JR., Monroe, North Carolina, for Appellant.  Kenneth A. Polite, Jr., Assistant Attorney General, Lisa H. Miller, Acting Deputy Assistant Attorney General, Finnuala K. Tessier, Appellate Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; G. Norman Acker, III, Acting United States Attorney, Joshua L. Rogers, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Tahji Antonio Eley pleaded guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to 108 months' imprisonment, within the Sentencing Guidelines range of 108 to 120 months' imprisonment. The offense level for that Guidelines range was enhanced six levels by the district court's finding that Eley "assaulted" a law enforcement officer "during the course of the offense or immediate flight therefrom," as provided in U.S.S.G. § 3A1.2(c)(1), and by an additional four levels by the court's finding that Eley possessed the firearm "in connection with another felony offense," as provided in § 2K2.1(b)(6)(B). On appeal, Eley challenges the district court's findings in applying these two sentencing enhancements. We affirm.

During his plea hearing, Eley admitted to the following facts underlying his conviction. When two officers were questioning Eley during a voluntary encounter as Eley sat in the passenger's seat of a parked vehicle, Officer Troy Brooks observed marijuana residue in the vehicle in plain view and, on that basis, decided to conduct a probable cause search of the vehicle. Then the following occurred, as Eley admitted at the hearing:

> Officer Brooks attempted to escort the defendant [Eley] out of the vehicle to conduct that probable cause search. The defendant continuously ignored all commands given to him and a struggle ensued between the defendant, Officer Brooks, and Officer Stirkey.
>
> During the struggle, the defendant continuously made attempts to reach for his waistband. At some point during the struggle, Officer Brooks heard one loud gunshot and shortly thereafter realized that Eley was in possession of a firearm, and that firearm was discharged during the struggle. Eley was finally secured in handcuffs and officers began checking Eley for a gun shot wound, and during this check officers located and recovered a firearm in the defendant's boxer briefs. . . . Further investigation revealed that the firearm

2

was actually reported stolen to the Raleigh Police Department back in February of 2019.

In light of these facts, which were more fully detailed in the presentence report ("PSR") prepared for Eley's sentencing, the PSR recommended the sentencing enhancements under U.S.S.G. §§ 3A1.2(c)(1) and 2K2.1(b)(6)(B). Eley objected to the enhancements without denying any of the underlying facts. The probation officer, through amendments to the PSR, responded to Eley's objections. As to the § 3A1.2(c)(1) enhancement, the probation officer stated: "Eley engaged in a physical struggle with officers. During this struggle with the officer, Eley repeatedly attempted to reach towards his waistband. At some point, the defendant was successful, and he discharged a stolen firearm. The bullet grazed the defendant in the stomach. Therefore, Eley's conduct during his arrest *created a substantial risk of serious injury or death to the officers*." (Emphasis added). And as to the § 2K2.1(b)(6)(B) enhancement, the probation officer stated:

> While speaking with Eley, the officers noticed marijuana residue on the middle console of the vehicle. A subsequent search of the vehicle revealed 3.12 grams of cocaine and a small amount of marijuana from the driver's side of the vehicle. When officers attempted to remove Eley from the vehicle, a struggle ensued and Eley discharged a firearm, accidentally shooting himself in the stomach. Once Eley was under control, a search of his person uncovered a stolen 9mm handgun and less than one gram of suspected cocaine. . . . Eley's dangerous conduct during his confrontation with law enforcement had the potential to facilitate *the offenses of Assault Inflicting Serious Injury on a Law Enforcement Officer or Assault With a Firearm on a Law Enforcement Officer, both of which are felonies under North Carolina General Statute[s]*. As such, the probation officer maintains the enhancement has been appropriately applied and no changes to the report are warranted.

(Emphasis added).

3

At the sentencing hearing, the district court adopted the PSR, found that both enhancements were factually supported, and then overruled Eley's objections. Before the court announced its ruling, the government had argued:

> [The officers] attempted to remove Mr. Eley from the passenger side of the vehicle. A struggle ensued. And this was not just a minor struggle pushing and shoving. Mr. Eley was struggling with two law enforcement officers and the entire time he knows there's a firearm on his person. These law enforcement officers, who are in fully-marked uniforms, don't know there's a gun in the car.
>
> So again the struggle ensues and Mr. Eley attempts on numerous occasions to reach for that firearm; and law enforcement officers can see he's reaching for something. They're giving him commands, he's not listening whatsoever. So unfortunately that firearm goes off and, thank God, one of these law enforcement officers were not killed that day. They were simply there doing their job trying to conduct a probable cause search and with Mr. Eley's — his conduct and his behavior that day, he ended up just shooting himself.
>
> *     *     *
>
> And when Mr. Eley was attempting to be treated [for his wound] by EMS, he was still being combative. He was verbally assaultive to the law enforcement officers. He actually made the statements to a couple of the law enforcement officers that were on scene, quote, I wish I would have killed myself, but first I wish I would have killed you. I wish I would have killed you. [End quote]. Mr. Eley is saying that to law enforcement officers who are simply trying to do their job.
>
> So his behavior on this day, again, knowing that these are law enforcement officers, knowing that they're trying to conduct their normal proceedings by doing a search of his vehicle, he created a substantial risk of serious bodily injury or death in this case. As we stated earlier, that firearm could have easily killed one of those two officers.

The district court grounded its ruling not only on the PSR but also on the court's acceptance of the government's argument, stating: "I think for the reasons the Government has argued and the opinions expressed by the probation office, that there's ample basis to apply both

[enhancements]." *See United States v. Hampton*, 628 F.3d 654 (4th Cir. 2010) (applying both enhancements under similar circumstances).

On appeal, Eley essentially challenges the district court's findings. First, with respect to the enhancement under § 3A1.2(c)(1), he argues that the government had to show an "aggravated assault" and that "there was no action by Mr. Eley that equated to an aggravated assault." He continues, "The offense-conduct section in the adopted [presentence report] merely suggests that he struggled with officers. The offense conduct does not allege or suggest that Mr. Eley had any intent to harm the officers."

To be sure, Application Note 4(A) to § 3A1.2(c) does indeed require that the enhancement be applied in circumstances "tantamount to *aggravated assault* against a law enforcement officer," but it goes on to explain that an "aggravated assault" is an assault that is "sufficiently serious to create at least a '*substantial risk of serious bodily injury*.'" (Emphasis added). In adopting the PSR and accepting the government's argument on this enhancement, the district court accepted the government's account that during the struggle, Eley attempted "on numerous occasions to reach for [the] firearm" in his waist, while law enforcement officers observed him doing so, and that, despite their commands, Eley discharged the firearm. The court concluded that Eley thus "*created a substantial risk of serious bodily injury or death in this case. . . . [The] firearm could have easily killed one of those two officers*." (Emphasis added). The PSR stated similarly that "[d]uring [the] struggle with the officer, Eley repeatedly attempted to reach towards his waistband. At some point, the defendant was successful, and he discharged a stolen firearm. The bullet grazed the defendant in the stomach. Therefore, Eley's conduct during his arrest created *a*

5

*substantial risk of serious injury or death to the officers*." (Emphasis added). These factual findings amply support a finding that Eley committed an "aggravated assault," as they show that Eley created a substantial risk of serious bodily injury. Thus, we conclude that the district court did not clearly err in applying the enhancement under § 3A1.3(c)(1).

With respect to the enhancement under § 2K2.1(b)(6)(B), Eley contends that the district court inappropriately applied this enhancement, stating that "counsel has reviewed the record and found no record evidence to suggest that Mr. Eley possessed the gun for the specific purpose of assaulting a law enforcement officer." The question, however, is not whether Eley possessed the gun for the purpose of assaulting an officer; the enhancement applies when the defendant "used or possessed any firearm or ammunition *in connection with another felony offense*." U.S.S.G. § 2K2.1(b)(6)(B). And on that requirement, the court again relied on both the PSR and what the government argued — that Eley's conduct in resisting the officers and discharging a firearm could have resulted in state felony charges for the assault with a firearm of law enforcement officers, in violation of N.C. Gen. Stat. § 14-34.5(a) (providing that "[a]ny person who commits an assault with a firearm upon a law enforcement officer . . . in the performance of his or her duties is guilty of a Class D felony"); *see also Hampton*, 628 F.3d at 663. The government points out that a § 14-34.5(a) assault can, under South Carolina law, be committed by a "completed battery," citing *United States v. Simmons*, 917 F.3d 312, 318–19 (4th Cir. 2019), and that there could hardly be any dispute that "Eley committed a completed battery on the law enforcement officers — he physically struggled with them as he was being removed from the car." *See United States v. Vinson*, 805 F.3d 120, 125 (4th Cir. 2015) ("A battery always includes an

6

assault, and is an assault whereby any force is applied, directly or indirectly, to the person of another" (quoting *State v. Britt*, 154 S.E.2d 519, 521 (N.C. 1967))).  Eley's argument against this enhancement simply amounts to a disagreement over the significance of the facts on which the district court relied.  We conclude, however, that the district court's finding was not clearly erroneous.

We add that even if the district court could have been found to have clearly erred in applying the two enhancements — not a conclusion that we make — any error would be harmless, as it is clear from the record that the district court still would have reached the same sentence without the enhancements.  As the court said:

> [L]et there be no confusion, that if I got it wrong under the Guidelines, this is what I sentence you resting firmly on the 3553 factors.  This is what I believe is a sentence that's sufficient but not greater than necessary.

*See United States v. McDonald*, 850 F.3d 640, 643 (4th Cir. 2017).

The judgment of the district court is according affirmed.

AFFIRMED

7